STATE OF MAINE
CUMBERLAND, ss.
SUPERIOR COURT
CIVIL ACTION
Docket No. AP-2021-008



COYNE OPERATED
PROPERTIES, LLC,

    Appellant,

v.

CITY OF WESTBROOK,

    Appellee.

**DECISION AND ORDER ON RULE
80B APPEAL**

REC'D CUMB CLERKS OFC
OCT 12 '21 PM3:30

Before the Court is Appellant Coyne Operated Properties, LLC's ("Coyne") appeal pursuant to M.R. Civ. P. 80B of a decision of Appellee City of Westbrook's ("the City") Zoning Board of Appeals ("the ZBA"). For the following reasons, the Court upholds the ZBA's decision and denies Coyne's Appeal.

## I. Background

Coyne appeals the ZBA's February 9, 2021 decision that the City's Land Use Ordinance ("the Ordinance") prohibits division of a nonconforming lot of record owned by Portland Terminal Company. Coyne is the owner of real property located at 9 Cumberland Street, Westbrook, Maine ("the Coyne Lot"). (R. Tab 1 ¶ 5.) The Coyne Lot conforms to the requirements of the Ordinance for lots located in the City Center District. (R. Tab 1 ¶ 6.)

The Coyne Lot abuts a parcel owned by Portland Terminal Company, which is designated by the City Assessor as Map 40, Lot 211 ("the PTC Lot"). (R. Tab 1 ¶ 7.) The PTC Lot is located in the Industrial Park District. (R. Tab 1 ¶ 8.) The PTC Lot is a nonconforming lot of record because it does not meet minimum frontage requirements of the Ordinance for lots in the Industrial Park District. (R. Tab 1 ¶ 8.)

Coyne planned to purchase a 24,000 square-foot portion of the PTC Lot ("the Purchased Parcel") and merge it with the Coyne Lot. (R. Tab 1 ¶ 9.) On July 24, 2020, counsel for Coyne emailed the City's Code Enforcement Officer ("the CEO") for a determination of whether the Ordinance would permit the proposed division. (R. Tab 1 ¶ 11.) On July 30, 2020, the CEO responded, stating that the portion of the PTC Lot that would remain after division and sale ("the Remaining Parcel") would be considered a new lot and no longer a nonconforming "lot of record." (R. Tab 1 ¶ 12.) As a new lot, the Remaining Parcel must meet the current frontage requirements for the Industrial Park District, which it does not. (R. Tab 1 ¶ 12.) Because the division would result in a new nonconforming lot, the CEO concluded that the division is prohibited by the Ordinance. (R. Tab 1 ¶ 12.)

Despite the CEO's decision, Coyne and the Portland Terminal Company executed the purchase and sale of the Purchased Parcel on July 31, 2020. (R. Tab 1 ¶ 13.) On August 26, 2020, Coyne appealed the CEO's interpretation to the ZBA. (R. Tab 1 ¶ 14.) The ZBA heard the appeal and reviewed the issue *de novo* at its November 10, 2020 meeting. (R. Tab 1 at 1.) Deliberation continued at the January 12, 2021 meeting of the ZBA. (R. Tab 1 at 1.) On February 9, 2021, the ZBA issued a Notice of Decision affirming the CEO's interpretation of the Ordinance and his decision. (R. Tab 1.) Coyne subsequently filed this timely Appeal of the ZBA's February 9 decision.

## II. Rule 80B Standard

The Superior Court's jurisdiction to hear Rule 80B appeals is a function of statute. M.R. Civ. P. 80B(a); *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 13, 879 A.2d 1007. The court reviews a decision of a board for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. The court may not substitute its

judgment for that of the Board. *Tarason v. Town of South Berwick*, 2005 ME 30, ¶ 6, 868 A.2d 230. Petitioners bear the burden "of showing that the record evidence compels a contrary conclusion." *Id.*

## III. Discussion

### A. Issues Properly Before the Court

First, the Court must identify which issues are properly before it. Issues not raised before the board or agency, including constitutional issues, may not be raised for the first time on appeal. *Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶ 9, 60 A.3d 1248; *Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 5, 771 A.2d 371. A party is deemed to have raised and preserved an issue if "there was a sufficient basis in the record to alert the [decision-maker] and any opposing party to the existence of that issue." *Brown v. Town of Starks*, 2015 ME 47, ¶ 6, 114 A.3d 1003 (quoting *Verizon New England v. Pub. Util. Comm'n*, 2005 ME 16, ¶ 15, 866 A.2d 844).

On appeal, Coyne argues that the ZBA erred in its interpretation of the Ordinance and its determination that division of the PTC Lot was not permitted. In addition, Coyne asserts that the ZBA's interpretation of the Ordinance effects an unconstitutional taking of Coyne's and Portland Terminal Company's property rights. Coyne, however, did not raise either constitutional issue before the ZBA and, of course, does not have standing to raise an argument as to Portland Terminal Company's property rights.[1] Thus, the issues

---

[1] In its Brief, Coyne points to the ZBA's Decision and a selection of pages of the transcript of the January 12, 2021 ZBA meeting, in which Coyne claims the issue was sufficiently raised. (R. Tab 1 ¶ 14; Tab 10, at 36-39.) The transcript reflects a discussion among members of the ZBA in which one member briefly questioned whether Portland Terminal Company or Coyne could develop the lots. The conversation concluded when another member of the ZBA reiterated that neither Coyne nor Portland Terminal Company had applied for a building permit, and that the issue was not before the ZBA at that time. Coyne's Counsel did not participate in the discussion. Moreover, the Decision expressly renders no opinion on the "buildability" of the Remaining Parcel. (R. Tab 1 at 9.) Contrary to Coyne's contention, the Record is insufficient to "alert the court and any opposing party to the existence" of an unconstitutional taking issue as to Coyne. *See Brown*, 2015 ME 47, ¶ 6, 114 A.3d 1003.

before the Court are whether the ZBA erred in its interpretation of the Ordinance or in upholding the CEO's determination that division of the PTC Lot was not permitted under the Ordinance.

## B. Interpretation of the Ordinance

The interpretation of a local ordinance is a question of law, which the court reviews *de novo*. *Priestly v. Town of Hermon*, 2003 ME 9, ¶ 7, 814 A.2d 995. When interpreting an ordinance, the court first looks to "the plain meaning of its language," and if the ordinance is clear, the court need not look beyond the language. *21 Seabran, LLC v. Town of Naples*, 2017 ME 3, ¶ 12, 153 A.3d 113. "Because the intent of zoning is generally to abolish nonconformities, 'zoning provisions that restrict nonconformities are liberally construed, and zoning provisions that allow nonconformities are strictly construed.'" *Wolfram v. Town of N. Haven*, 2017 ME 114, ¶ 9, 163 A.3d 835 (quoting *Day v. Town of Phippsburg*, 2015 ME 13, ¶ 15, 110 A.3d 645).

Several provisions of the Ordinance are relevant to this matter. First, § 202.13 of the Ordinance provides the definition and basic requirements for a lot:

> A lot is a parcel of land of at least sufficient size to conform to minimum zoning requirements for use, coverage, and associated factors, and to provide such yards and other open spaces as are herein required. The lot must have the minimum lot frontage for its particular zoning district fronting on a public or private right-of-way . . . .

(R. Tab 18 at 1.) The Ordinance also provides for the lawful existence of certain lots that do not conform to the dimensional requirements of the Ordinance. A "nonconforming lot" is: "A single lot of record which, at the effective date of adoption or amendment of this Ordinance, does not meet the area, frontage or width requirements of the district in which it is located." (R. Tab 17 at 13.) A "lot of record" is: "A parcel of land with ascertainable boundaries described in a recorded deed [or] in a subdivision plan

approved by the Planning Board, and meeting prior zoning requirements at the time this Ordinance was adopted."[2] (R. Tab 18 at 2.)

These provisions create two categories of lots permitted by the Ordinance: (1) conforming lots and (2) nonconforming lots that were, by definition, *created before enactment of the Ordinance.* Absent a variance, any lot created after enactment of the Ordinance that does not conform to dimensional requirements is not a lot of record and must be in violation of the Ordinance.[3]

> Regarding division of land, Section 202.22 of the Ordinance provides:
>
> A structure may not be constructed or used, and land may not be used or divided, except in accordance with this Ordinance. All other construction, use or division of land or buildings is expressly prohibited except that which is already lawfully existing at the time this Ordinance is enacted.

(R. Tab 18 at 3.) The plain language of § 202.22 prohibits any new division of land unless it is done "in accordance with" the Ordinance. Because the Ordinance does not permit new nonconforming lots, any division of land that creates new nonconforming lots is, therefore, expressly prohibited. *See Grant v. Town of Belgrade,* 2019 ME 160, ¶ 24, 221 A.3d 112.

### C. Application of the Ordinance to the PTC Lot Division

The parties do not dispute, and the ZBA found, that the PTC Lot is a nonconforming lot of record. The division created two new lots, neither of which

---

[2] The word "or" in brackets in the definition does not appear in the Ordinance. The ZBA concluded in its Notice of Decision that the omission of the word "or" is a typographical error because the phrase "in a recorded deed in a subdivision plan" is nonsensical. (R. Tab 1 ¶ 10.) The Court agrees with the ZBA's conclusion.

[3] Coyne argues that the Ordinance leaves a gap as to those lots that aren't lawful nonconforming lots of record or conforming lots—essentially, newly nonconforming lots. Coyne argues that the Ordinance must permit these lots to exist because the Ordinance does not expressly prohibit them. To read the Ordinance as widely permitting the creation of new lots that don't conform to the Ordinance would render much of the Ordinance meaningless. Such a reading would also be contrary to the general purpose of zoning, which is to eliminate or reduce nonconformities. *See Wolfram,* 2017 ME 114, ¶ 9, 163 A.3d 835.

retained the PTC Lot's status as a nonconforming lot of record. As a new lot that does not meet the minimum frontage requirement for its zoning district, the Remaining Parcel violates the Ordinance. Therefore, the division was prohibited by the Ordinance.

## IV. Conclusion

For the foregoing reasons, the Court upholds the ZBA's decision. Accordingly, the Court denies Coyne's Appeal.

The entry is:

Coyne Operated Properties, LLC's Appeal pursuant to Rule 80B is DENIED.

The Clerk is directed to incorporate this Decision and Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 10/12/2021

MaryGay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 10/13/2021

Page 6 of 6